IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CARRIE VALK, a/n/f, G.W.B.V., a    §
minor child,    §
   §
     Plaintiff,    §
   §
V.    §   No. 3:24-cv-2582-L-BN
   §
ROYSE CITY INDEPENDENT    §
SCHOOL DISTRICT,    §
   §
     Defendant.    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

In this lawsuit that United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b), *see* Dkt. No. 11, the Court granted Defendant Royse City Independent School District ("RCISD")'s motion to dismiss the first amended complaint filed by Plaintiff Carrie Valk, as next friend of her minor child, but granted Valk leave to file a second amended complaint (the "SAC"), *see Valk a/n/f G.W.B.V. v. Royse City Indep. Sch. Dist.*, No. 3:24-cv-2582-L-BN, 2025 WL 2632405 (N.D. Tex. July 9, 2025), *rec. accepted*, 2025 WL 2254067 (N.D. Tex. Aug. 7, 2025) ("*Valk I*").

Valk timely did so and again seeks only money damages. *See* Dkt. No. 23.

RISD moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 24 & 25. Valk filed an untimely response but simultaneously moved for an extension of time based on excusable neglect. *See* Dkt. No. 27. And RISD replied. *See* Dkt. No. 28.

For the reasons set out below, the undersigned recommends that the Court grant Valk's motion for extension as to the response and RCISD's motion to dismiss and, because the claims have now been amended twice, dismiss this lawsuit with prejudice.

## Discussion

As before, based on events that occurred while G.W.B.V. received special education services at an RCISD elementary school, Valk brings claims under Title II of the Americans with Disabilities Act (the "ADA" or "Title II"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq.*

And the Court's analysis of the second amended allegations should start with its findings as to the insufficiency of the prior version of the complaint:

> The factual content in Valk's amended complaint does not allow the Court to reasonably infer that RCISD subjected G.W.B.V. to intentional discrimination under the ADA and Section 504.
>
> It only offers, as to the alleged assault, that it occurred in the presence of RCISD employees who were aware of it and "did not prevent it because of G.W.B.V.'s significant disabilities" and, as to the allegation that RCISD failed to care for G.W.B.V.'s personal needs, that the District's employees allowed "him to remain in underwear with feces because of G.W.B.V.'s significant disabilities."
>
> Such assertions are conclusory as to the requirement that the alleged ADA or Section 504 discrimination occurred "by reason of" G.W.B.V.'s disability. That is, all that has been alleged is that (1) G.W.B.V. has a disability and that (2), on one occasion, G.W.B.V. was the victim of an assault by a fellow student and that, on a separate occasion, he was allowed to remain in soiled underwear. But the amended complaint then fails to offer factual content from which the Court may infer that these events occurred because of his disability.
>
> And the amended allegations are particularly conclusory as to requirement that, here, they also must allow for a reasonable inference of intentional discrimination based on G.W.B.V.'s disability, because the

amended allegations fail to eliminate negligence or inadvertence, as opposed to intentional discrimination, as reasons underlying the alleged claims of discrimination.

*Valk I*, 2025 WL 2632405, at *4 (citation omitted).

Valk addresses these deficiencies through these amended factual allegations:

On November 10, 2021, G.W.B.V. was wet with urine when Petitioner picked him from school, which was quite uncommon for him. He also came home with a big red spot and scratch on his knee for which Defendant employees could not explain.

On at least one occasion on or around November 11, 2022, another student in G.W.B.V.'s classroom assaulted him during school hours in a self-contained special education classroom. The Defendant's employees for that classroom at that time were Allee Pence, Shaun Belcher, and Lauren Trommer. This assault was in the presence of Defendant's employees. The Defendant's employees were aware of the assault as it was taking place and did not prevent it. Petitioner did not learn of this event until weeks later after filing incident reports and demanding to see video recordings.

On November 15, 2021, Petitioner arrived at school to drop off G.W.B.V., he was visibly distraught and refused to go into the school. He repeatedly expressed that he did not like his teacher. Defendant employee Mrs. Trommer observed this incident, looked at Defendant employee Mrs. Pence, and Mrs. Trommer stated, "He is talking about you." Petitioner ended up having to carry him into the school screaming and crying. G.W.B.V. has not had an issue with attending school in the past. He usually is very excited to attend school. Mrs. Pence also acknowledged that this behavior was very unlike him. G.W.B.V. was not able to verbally tell Petitioner when, where or what incident occurred. He was communicating that something happened through his physical behavior and the language skills that he possessed. Since the November 15, 2021, incident in which G.W.B.V. was distraught and refusing to enter the school building, he continued to display that he was upset regarding Ms. Pence.

On November 29, 2021, Defendant's employees in G.W.B.V.'s classroom failed to provide personal care to G.W.B.V. by allowing him to remain in underwear with feces. This was discovered when he came home in wet clothes that had feces still on them.

On November 30, 2021, Plaintiff took G.W.B.V. to the restroom after school and he had dried feces on his buttocks and body.

In November 2021, Petitioner completed multiple incident reports with the school for the above referenced incidents and concerns. Petitioner requested to view video recordings over the various dates of

- 3 -

the above referenced incidents. Petitioner communicated with several of Defendant's employees over the course of several weeks without substantive responses or actions.

Towards the end of the Fall of 2021, Defendant employees Shaun Belcher and Allee Pence, staff in G.W.B.V.'s classroom, because of one or more incidents in G.W.B.V.'s classroom ended their employment in those positions. Mr. Belcher admits that he was screaming so much in G.W.B.V.'s classroom that he could not help the students. Ms. Pence admits that a report was made by a Defendant employee against her to Child Protective Services regarding her alleged conduct towards G.W.B.V.

These incidents demonstrate a clear pattern of abusive and neglectful incidents occurring with G.W.B.V. at school with multiple Defendant employees, over numerous days, and in multiple settings. Petitioner observed the negative results of those incidents in G.W.B.V.'s care and behavior. Petitioner inquired with Defendant employees about G.W.B.V.'s care and behavior. Defendant employees repeatedly failed to investigate and/or report the incidents that were occurring at school with G.W.B.V. to Petitioner, and failed to take steps to prevent further incidents of abuse and neglect of G.W.B.V.

G.W.B.V. could not report these incidents to anyone due to his disabilities, and the incidents continued over and over again. Defendant and Defendant employees involved in the incidents all knew this.

Despite the fact that numerous Defendant employees were present at various incidents, Defendant had access to video recordings from G.W.B.V.'s classroom and other locations at school, and Petitioner repeatedly reaching out to Defendant to express her concern and request for explanations of the changes she was observing in G.W.B.V., Defendant intentionally failed to notify Petitioner of many of the incidents described above.

Dkt. No. 23, ¶¶ 12-21.

Valk further asserts that

Defendant's described acts and omissions as to G.W.B.V. were discriminatory … because he required protection and personal care because of his disability, and Defendant took no or insufficient action to provide G.W.B.V. protection and personal care so that he could access his educational program. Defendant was repeatedly made aware of harmful incidents at school involving G.W.B.V. and failed to take action timely, or at all. Defendant withheld information about multiple incidents at school involving G.W.B.V. from Petitioner, knowing that because of his disability, G.W.B.V. was unable to tell anyone what was happening to him at school.

> This pattern of incidents cannot reasonably be explained by one negligent or inadvertent act, or one negligent Defendant employee. But for G.W.B.V.'s disability, these incidents would not have occurred, and if one incident did occur G.W.B.V. could have told someone and the incidents would have stopped. Petitioner's communications and observations of Defendant employees and G.W.B.V. leave no doubt that her child was targeted because of his disabilities and was repeatedly abused and neglected because of his disabilities.

*Id.*, ¶¶ 52 & 53.

And, so, the undersigned agrees with RCISD that Valk clearly asserts a claim of discrimination under the ADA and Section 504 and may include a separate claim based on a hostile educational environment to the extent that it's alleged that, "because of his disabilities," G.W.B.V. "was targeted" and "repeatedly abused and neglected."

And, because of the context of these ADA and Section 504 claims, the undersigned will again start by observing that

> [s]everal "distinct, but linked, [federal] statutes" protect students with disabilities. *Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 513 (5th Cir. 2024).
> The first is the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, ("IDEA"), which is not [directly] implicated by a suit seeking just money damages, as "the IDEA's remedy is compensatory education, not compensatory damages," while Title II of the ADA "protects the rights of all individuals with disabilities, banning discrimination by public entities, including schools." *Lartigue*, 100 F.4th at 514 (cleaned up).

*Valk I*, 2025 WL 2632405, at *2; *see also Lartigue*, 100 F.4th at 514 ("Unlike the IDEA, the ADA authorizes 'individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages.'" (quoting *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 149-50 (2023))).

Turning first to the disability discrimination claim, then, "[t]he ADA is a broad

mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals and to integrate them into the economic and social mainstream of American life." *Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 470 (5th Cir. 2023) (per curiam) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011)); *see, e.g.*, *Luke v. Texas*, 46 F.4th 301, 304 (5th Cir. 2022) ("The question is whether denying a deaf defendant an interpreter during his criminal proceedings violates the Americans with Disabilities Act. The answer is yes.").

> The focus of Title II of the ADA is the provision of public services. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Section 504 provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

*Clark*, 63 F.4th at 470.

Where claims are made under both Title II and Section 504, courts typically "focus on Title II," applying that analysis to the Section 504 claim, since the ADA and the Rehabilitation Act "'generally are interpreted in *pari materia*.'" *Id.* (quoting *Frame*, 657 F.3d at 223); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287-88 & n.76 (5th Cir. 2005) (en banc) ("This circuit, as well as others, has noted that, because the rights and remedies under both statutes are the same, case law interpreting one statute can be applied to the other." (citations omitted)); *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) ("The only material difference between [Section 504 and Title II of the ADA] lies in their respective causation requirements'"

– while Section 504 "requires that the plaintiff's disability be the 'sole reason' for the exclusion or denial of benefits, the ADA's standard is less stringent.").

To plausibly allege a Title II violation, a plaintiff must provide factual content to show – or from which the Court may infer –

> "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."

*Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)); *accord T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021).

And, ultimately, "[e]vidence of intentional discrimination is necessary to support a claim for monetary damages." *T.O.*, 2 F.4th at 417.

In the related context of employment discrimination claims under Title I of the ADA, when a court applies Rule 12(b)(6)'s standards, the complaint "need not contain specific facts establishing a prima facie case of discrimination under the framework set forth ... in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (cleaned up); *accord Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 n.45 (5th Cir. 2023) (en banc); *see also, e.g.*, *S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, No. 22-30139, 2023 WL 3723625, at *3 (5th Cir. May 30, 2023) (per curiam) ("To be sure, we have held that a plaintiff need not allege a comparator at the pleading stage in order to advance her discrimination claims under the ADA and § 504." (citing *Pickett v. Texas Tech Univ.*

*Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022))).

"But a plaintiff is still required to plead sufficient facts *on all of the ultimate elements* of [each] claim." *Norsworthy*, 70 F.4th at 336 (cleaned up; emphasis in original); *see, e.g., T.O.*, 2 F.4th at 417 ("The trouble is that none of the factual allegations contained in the complaint permit the inference that T.O. was ever discriminated against because of his disability."); *Nelson v. Collins*, 765 F. App'x 75, 75-76 (5th Cir. 2019) (per curiam) (affirming dismissal of an ADA Title II claim where the plaintiff's "allegations [did] not set forth facts supporting a claim that he was discriminated against in any way because of his disability").

It is alleged that G.W.B.V. "was a student with disabilities, and functionally nonverbal" and "received special education services for his disabilities." Dkt. No. 23, ¶¶ 10 & 11.

But, "[a]t this stage, [Valk still] must plead facts making it plausible that [G.W.B.V.] was discriminated against because of – but not necessarily solely because of – his disability." *S.B.*, 2023 WL 3723625, at \*3 (cleaned up; quoting *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019))); *see also Stankevich v. Miss. Coll. Sch. of Law*, No. 24-60087, 2024 WL 4056610, at \*2 (5th Cir. Sept. 5, 2024) (per curiam) ("To be sure, [a plaintiff's] disability need not have been [the] 'sole' motivation," "[b]ut it still must have been a 'motivating factor.'" (quoting *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (per curiam)))

And the incidents alleged may support claims of negligence (1) to that extent

that G.W.B.V. was allowed to remain in soiled clothing, or (2) to the extent that G.W.B.V. was assaulted by another student while school staff was present, or (3) to the extent that school staff failed to keep Valk informed – and Valk concludes as much, as she asserts that "[t]hese incidents demonstrate a clear pattern of abusive and neglectful incidents occurring with G.W.B.V. at school with multiple Defendant employees, over numerous days, and in multiple settings." Dkt. No. 23, ¶ 19.

But, even accepting all well-pleaded facts as true, no factual content in this third version of the complaint allows for a reasonable inference that any of the alleged incidents, on which the discrimination claim is based, occurred because of, or due to, G.W.B.V.'s disability – even in part.

That is, Valk offers several conclusions and appears to draw an inference unsupported by factual content that it's possible that these incidents occurred because G.W.B.V. is nonverbal. *See id.*, ¶¶ 52 & 53; *see also id.*, ¶ 20 ("G.W.B.V. could not report these incidents to anyone due to his disabilities, and the incidents continued over and over again. Defendant and Defendant employees involved in the incidents all knew this.").

But more is required to allege a plausible claim of discrimination based on a disability. And Judge Lindsay's recent consideration of *T.O.* is equally applicable here: in *T.O.*,

> [t]he plaintiffs alleged that the teacher intervened because she was "angered by T.O.'s disabilities and that he was being treated in compliance with his Behavioral Intervention Plan" and that she was "motivated by ... prejudicial animus to his disabilities." [2 F.4th] at 418 n.44. The Fifth Circuit, however, disagreed, noting that the amended complaint lacked any factual allegations that permit the inference that

> the defendants' actions were " 'by reason of his disability' – an essential element of a discrimination claim" because "the only allegations linking [the teacher's] conduct to T.O.'s disability are conclusional ones that cannot withstand Rule 12(b)(6) scrutiny." *Id.* at 418.
>
> Here, like in *T.O.*, Broome alleges in conclusory fashion that GISD employees "took the actions herein with specific animus towards J.B.'s disabilities ..." and that the employees "were all individually and collectively frustrated with J.B.'s inability to communicate and respond to instructions provided in the classroom." Am. Compl. ¶ 28. These types of allegations are like those in *T.O.*, in which the teacher was "angered by [the students] disabilities" and "motivated by prejudicial animus[.]" 2 F.4th at 41. As in *T.O.*, these skeletal pleadings are insufficient to plausibly allege under Section 504 that the incident was solely because of *J.B.*'s disability.

*Broome v. Garland Indep. Sch. Dist.*, No. 3:25-cv-1532-L, 2026 WL 860096, at *7 (N.D. Tex. Mar. 27, 2026); *cf. Ituah by McKay v. Austin State Hosp.*, A-18-CV-11-RP, 2021 WL 9816615, at *11 (W.D. Tex. Nov. 18, 2021) ("Although Ituah's expert opines Ituah was more vulnerable to assault based on her disability, Ituah offers no evidence she was harassed or assaulted based on her disability."), *rec. adopted*, 2022 WL 17732330 (W.D. Tex. Mar. 21, 2022), *aff'd*, 2023 WL 3222848 (5th Cir. May 3, 2023); *S.B.*, 2023 WL 3723625, at *3 ("Although S.B.'s autism was the root cause of her classroom outbursts, it cannot be inferred that Rowell's and Nick's reactions were influenced by her disability. Rather, these claims suggest that S.B. wasn't disciplined due to her disability but to address her disruptive conduct in class. Therefore, punishing S.B. for her disruptive behavior is not the same as treating her differently due to her disability." (characterizing that case as "no different from *T.O.*"; citing *T.O.*, 2 F.4th at 412-18)); *Landry v. St. Tammany Par. Sch. Bd.*, Civ. A. No. 24-2096, 2025 WL 1742202, at *4 (E.D. La. June 5, 2025) ("This Court is bound by the very clear Fifth Circuit precedent on this issue.... As was the case in both *S.B.* and *T.O.*, Plaintiffs

fail to provide any facts sufficient to indicate that L.T. was mistreated because of her disability, and instead, the only facts Plaintiffs plead indicate that L.T. was mistreated because of her inappropriate behavior in which she hit, spit, kicked, refused to move, eloped, and refused to comply with tasks. Because Plaintiffs have not adequately alleged that any complained of behavior was based upon L.T.'s disability, Plaintiffs' ADA and Rehabilitation Act claims must be dismissed."), *rec. adopted*, 2025 WL 1735401 (E.D. La. June 23, 2025).

And, to the extent that Valk alleges a separate hostile environment claim, in this context that claim has five elements:

> (1) [G.W.B.V.] was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) [RCISD] knew about the harassment, and (5) [RCISD] was deliberately indifferent to the harassment.

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017) (quoting *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014)).

Such a claim may be limited to student-on-student harassment. *See Bradyn S. v. Waxahachie Indep. Sch. Dist.*, No. 3:18-cv-2724-L, 2019 WL 3859301, at *8 (N.D. Tex. Aug. 16, 2019).

But, even if it's not, Valk has not alleged factual content to plausible plead the second essential element – harassment based on a disability – for the reasons set out above. Nor has Valk alleged facts from which the Court may reasonably infer that RCISD acted with deliberate indifference. *See Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 484 (5th Cir. 2021) (per curiam) (assuming that "a hostile educational

environment claim premised upon student harassment by school employees" "is legally viable," "deliberate indifference is an essential element").

"Deliberate indifference is a 'high bar.'" *Id.* (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)).

And, "[b]ecause deliberate indifference is a lesser form of intent rather than a heightened degree of negligence, neither negligent nor merely unreasonable responses are enough." *Id.* (quoting *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019)).

"Rather, to clear that 'high bar,' a response must be 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); citing *Sanches*, 647 F.3d at 167); *see also Sneed v. Austin Indep. Sch. Dist.*, 50 F.4th 483, 490 (5th Cir. 2022) ("The proper inquiry is whether, taken in context, the recipient responded reasonably to the harassment given its knowledge and the severity of harassment reported. A reasonable response need not involve rooting out harassment or taking the most effective remedial steps available. It requires only that the recipient take some action that is not pretextual or knowingly ineffective." (cleaned up)); *I.F.*, 915 F.3d at 369 ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. Indeed, as the district court noted, our precedent makes it clear that negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference." (cleaned up)).

## Recommendation

The Court should grant Plaintiff's motion for extension of time [Dkt. No. 27] and Defendant Royse City Independent School District's motion to dismiss the second amended complaint [Dkt. No. 24] and dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 15, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE